UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RICHARD MILLER                          CIVIL ACTION NO.: 2:20-CV-3044

VERSUS                                  JUDGE:  LANCE M. AFRICK

TOURO INFIRMARY                         MAGISTRATE:  DONNA PHILLIPS
                                        CURRAULT

MEMORANDUM IN SUPPORT OF
TOURO INFIRMARY'S MOTION FOR SUMMARY JUDGMENT

*MAY IT PLEASE THE COURT:*

Defendant, Touro Infirmary ("Touro"), requests this Court to enter summary judgment on the claims of plaintiff, Dr. Richard Miller ("Plaintiff"), alleging (a) gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and (b) discrimination based on a disability in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA").  As demonstrated herein, Plaintiff has no evidence that his termination was based on his gender or any disability in any manner whatsoever. Instead, the evidence demonstrates that he was terminated for sleeping while on duty in violation of well-established Touro policy, which is a legitimate, non-discriminatory reason that cannot be countered by Plaintiff with any evidence of pretext or illegal motive. Accordingly, under the *McDonnell Douglas* burden-shifting standard of proof applicable in Title VII and ADA actions, Plaintiff's discrimination claims fail as a matter of law. Because the material, undisputed facts show that there is no genuine issue for trial, summary judgment is appropriate and Plaintiff's claims against Touro for gender and disability discrimination should be dismissed with prejudice.

2090820.v1

## I.    FACTUAL BACKGROUND

Plaintiff is a male who alleges that he is disabled due to one or more of the following conditions: Post-Traumatic Stress Disorder ("PTSD"), anxiety, depression, chronic migraine headaches, and pain in his back and hips. Complaint, R. Doc. 1, ¶¶ 12–13. Plaintiff was employed by Touro from 2007 to January 2018 at its facility located at 1401 Foucher Street, New Orleans, LA 70115. *See* Ex. A, Declaration of Tara Montgomery ("Montgomery Decl."), ¶ 5. At the time of Plaintiff's termination on January 9, 2018, he was employed as a "Pharmacist" assigned to the night shift, which began at 10:00 p.m. and ended at 8:00 a.m. *See* Montgomery Decl., ¶ 4. Plaintiff's immediate supervisor at all relevant times was Dr. Roxanne Doley ("Dr. Doley"), the "Lead Pharmacist" of Touro; Plaintiff also reported to Dr. Tara Montgomery ("Dr. Montgomery), the Director of Pharmacy. *See* Montgomery Decl., ¶ 6. Finally, Sharon Oliver ("Ms. Oliver") was the Operations Manager at Touro, whose duties included overseeing the operations of the Pharmacy Department. *See* Montgomery Decl., ¶ 7.

In or about 2016, Ms. Oliver offered to Plaintiff to transfer to the night shift, which ran from 10:00 p.m. to 8:00 a.m., and Plaintiff accepted this transfer offer. *See* Montgomery Decl., ¶ 9. At all times relevant to his discipline and termination, Plaintiff worked on the night shift (10:00 p.m. to 8:00 a.m.), seven days per week, every other week. *See* Montgomery Decl., ¶ 10. Plaintiff also worked a separate job with the VA Hospital in New Orleans as a Pharmacist simultaneously with his work for Touro. *See* Ex. B, Excerpted Deposition Transcript of Richard Miller ("Miller Depo.") at 157:25–163:9. Plaintiff's hours with the VA were from 8:30 to 5:00, five days per week, but every week (not alternating weeks as with Touro). *See* Miller Depo. at 158:12–23. In other words, during the weeks when Plaintiff worked at Touro, he worked approximately nineteen (19) hours per day (from 8:30 a.m. to 5:00 p.m. at the VA, and 10:00 p.m. to 8:00 a.m. at Touro) for a

total of approximately 115 hours per week (nearly three times a standard 40-hour workweek). *See* Miller Depo. at 161:5–162:2.

On Thursday, December 21, 2017, Dr. Doley, the Lead Pharmacist of Touro, was attempting to adjust the Pharmacy Department schedule for January 1, 2018 to cover for an employee who was out on vacation. Dr. Doley asked another Pharmacist, Dr. Jennifer Nguyen ("Dr. Nguyen") if she could cover the shift. *See* Ex. C, Declaration of Jennifer Nguyen ("Nguyen Decl."), ¶ 4; Ex. D, 1/4/17 Employee Corrective Action Form ("Termination Form"). Dr. Nguyen stated to Dr. Doley that she would only agree to the shift change if it was expected to be a slow night. *See* Nguyen Decl., ¶ 5; Termination Form. When Dr. Doley asked Dr. Nguyen why, Dr. Nguyen stated that the other Pharmacist assigned to that shift, Plaintiff, had slept through most of the shift the last time she had been assigned to work with him, which was on September 29, 2017. *See* Nguyen Decl., ¶ 5;; Termination Form. Dr. Nguyen stated to Dr. Doley that on September 29, 2017, she had attempted to call Plaintiff multiple times while he was in the "IV Room" in the rear area of the Pharmacy Department, in order to request that he bring a patient's IV materials to the front of the Pharmacy Department, but the phone was not answered. *See* Nguyen Decl., ¶ 6; Termination Form. Dr. Nguyen stated to Dr. Doley that she walked back to the IV Room to speak to Plaintiff and observed him sleeping in a chair. *See* Nguyen Decl., ¶ 6; Termination Form. Dr. Nguyen stated to Dr. Doley that Plaintiff stayed in the IV Room for the remainder of his shift and she had to wake him at 6:00 a.m. to notify him that she was leaving and that he would need to cover the dispensing area until the morning shift Pharmacists arrived at 8:00 a.m. *See* Nguyen Decl., ¶ 6; Termination Form.

Dr. Doley then asked another Pharmacist, Dr. Kawita Mandhare (now Kawita Mai after her marriage) whether she had ever observed Plaintiff sleeping on the job. *See* Ex. E, Declaration

3

of Kawita Mai ("Mai Decl."), ¶ 5. Dr. Mai reported to Dr. Doley that she had previously observed Plaintiff sleeping while on duty on December 21, 2017 and on several prior occasions. *See* Mai Decl., ¶ 6; Termination Form. Dr. Doley then conferred with Pharmacy Director Dr. Montgomery regarding Dr. Nguyen's and Dr. Mai's complaints that Plaintiff slept on the job on multiple occasions. *See* Montgomery Decl., ¶ 11. On January 3, 2018, Dr. Doley, Plaintiff's direct supervisor, forwarded to Dr. Montgomery, the Pharmacy Director, emails received from Dr. Mai regarding the December 21, 2017 incident. *See* Montgomery Decl., ¶ 12; Ex. F, E-mails between Mai, Doley, and Montgomery.

Dr. Montgomery then spoke directly to Dr. Mai and asked her to verbally confirm that she had observed Plaintiff sleeping while on duty and whether she had any evidence to confirm her accusation. *See* Montgomery Decl., ¶ 13; Mai Decl., ¶ 8. Dr. Mai again confirmed that she had personally observed Plaintiff sleeping while on duty on December 21, 2017 and on several prior occasions. *See* Montgomery Decl., ¶ 13; Mai Decl., ¶ 8.

Thus, By January 3, 2018, Dr. Montgomery had received complaints from two separate Pharmacists that Plaintiff had slept or appeared to sleep while on duty on multiple occasions, including the confirmed dates of September 29, 2017, and December 21, 2017. (Plaintiff admits he worked the night shift on December 21, 2017, the date he was observed sleeping on the job by Dr. Mai. *See* Miller Depo. at 172:2–3.)

Touro Policy No. HR 210, *Code of Conduct and Performance* specifically provides under the section titled "[v]iolations which may result in immediate discharge" that employees may be terminated without prior warning or notice for "[s]leeping on duty **or** appearance of sleeping on duty[.]"*See* Ex. G, *Code of Conduct and Performance* Policy, p. 3. Plaintiff was well aware that Touro's employee policy prohibited sleeping or even the appearance of sleeping, having received

4

a copy of the policy upon his hiring and having signed an acknowledgment stating that he had received and agreed to abide by all Touro conduct and disciplinary policies. *See* Miller Depo. at 165:7–166:19; Ex. H, Miller Acknowledgment of Receipt.

Dr. Montgomery also discussed the complaints of Dr. Mai and Dr. Nguyen regarding Plaintiff sleeping with Cindy Mousa ("Ms. Mousa"), Touro's then-Director of Human Resources. *See* Montgomery Decl., ¶ 14. Ms. Mousa and Dr. Montgomery determined that there was sufficient evidence that Plaintiff had committed an immediately dischargeable offense by sleeping or appearing to sleep on duty on September 29, 2017 and December 21, 2017. *See* Montgomery Decl., ¶ 14. As a result, Dr. Montgomery recommended that Plaintiff be terminated pursuant to Touro Policy No. HR 210, and Ms. Mousa agreed and approved the termination. *See* Montgomery Decl., ¶ 14. On January 4, 2018, Dr. Montgomery completed an Employee Corrective Action form indicating that Plaintiff was being terminated for sleeping or appearing to sleep while on duty and for failure to fulfill job requirements in violation of Touro Policy No. HR 210. *See* Montgomery Decl., ¶ 15; Termination Form. Dr. Montgomery included a written narrative of the complaints by Dr. Mai and Dr. Nguyen regarding Plaintiff sleeping on the job on September 29, 2017 and December 21, 2017. *See* Termination Form.

On January 9, 2018, Pharmacy Director Dr. Montgomery asked Plaintiff to come to HR Director Ms. Mousa's office for a meeting. *See* Montgomery Decl., ¶ 16. During the meeting, Ms. Mousa informed Plaintiff that an investigation of employee complaints had shown that Plaintiff slept or appeared to sleep while on duty in violation of Touro policy. *See* Montgomery Decl., ¶ 16; Miller Depo. at 172:24–174:11. Plaintiff denied to Ms. Mousa and Dr. Montgomery that he slept on duty on the dates in question. *See* Miller Depo. at 173:5–7. Based on the statements of Dr. Mai and Dr. Nguyen that they had personally witnessed Plaintiff sleep while on duty, Dr. Montgomery

and Ms. Mousa determined that Plaintiff was not being truthful in his denial of sleeping or appearing to sleep while on duty. *See* Montgomery Decl., ¶ 17. Plaintiff was notified he was being terminated for violating Touro Policy No. HR 210 for sleeping or appearing to sleep while on duty. *See* Montgomery Decl., ¶ 18.

Plaintiff never stated to Dr. Montgomery or Ms. Mousa prior to or during the January 9, 2018 meeting that he had any specific medical condition or disability that limited his ability to perform his duties. *See* Montgomery Decl., ¶ 19. More importantly, Plaintiff never stated to any supervisor or manager of Touro at any point during his employment that he had a disability that interfered with his ability to perform his duties, that he needed an accommodation for any disability, or that he took medication that caused him to become drowsy or fall asleep at work. *See* Montgomery Decl., ¶ 20; Miller Depo. at 119:5–15; 120:24–122:22. To the contrary, during Plaintiff's employment with Touro, he did submit several FMLA leave requests to Kishia Hughes ("Ms. Hughes"), a "Human Resources Generalist" who was responsible for receiving and processing medical leave requests. *See* Miller Depo. at 269:16–271:5; Ex. I, Excerpted Deposition Transcript of Kishia Hughes ("Hughes Depo.") at 50:21–51:18. Plaintiff never submitted any leave request to anyone other than Ms. Hughes while he was employed by Touro. *See* Miller Depo. at 269:16–271:5. As the employee in charge for employee leave requests, Ms. Hughes was the only Touro employee who had access to the protected health information and medical records contained or referenced in Plaintiff's FMLA leave records. *See* Hughes Depo. at 74:22–75:24. At no time during Plaintiff's employment did Ms. Hughes ever communicate any of the contents of Plaintiff's FMLA leave records to Dr. Montgomery, Dr. Doley, Ms. Oliver, Ms. Mousa, or any other Touro supervisor or manager involved in the discipline or Plaintiff or the decision to terminate Plaintiff.

*See* Hughes Depo. at 63:10–20. Thus, it was impossible for any of the individuals who decided to terminate Plaintiff to know that he had any disability.

After Plaintiff's termination in January 2018, Touro interviewed several internal candidates, both male and female, for Plaintiff's former position. *See* Montgomery Decl., ¶ 21. Ultimately, Touro selected Dr. Dana Van Buren ("Dr. Van Buren"), a female, part-time PRN (as-needed) Pharmacist who had been working for Touro for several years and had an unblemished performance record. *See* Montgomery Decl., ¶ 21. Plaintiff is not aware of Dr. Van Buren's education or work history and does not know whether she is similarly or more qualified than him to perform the position of night shift Pharmacist at Touro. *See* Miller Depo. at 244:13–22.

Although Plaintiff claims for the first time in this lawsuit that he witnessed another Pharmacist, Dr. Karen Wells ("Dr. Wells"), sleeping while on duty, Plaintiff admits that he never submitted a complaint to his supervisor or any member of Touro management at any time during his employment regarding Dr. Wells or any other Touro employee sleeping or appearing to sleep while on duty. *See* Miller Depo. at 138:15–25; 2471–248:5. In fact, Plaintiff admitted that he only worked with Dr. Wells occasionally when she covered for another of Plaintiff's co-workers who was out for vacation or other reasons. *See* Miller Depo. at 113:21–114:21. Moreover, Dr. Montgomery never received any complaint from anyone that Dr. Wells slept while on duty, and no such complaints appear in Dr. Wells' personnel records. *See* Montgomery Decl., ¶ 22.

Plaintiff alleges that certain female Pharmacy Department employees—Ms. Oliver, Dr. Montgomery, Dr. Philomene Allain, Dr. Van Buren, and Dr. Wells—are all members of the Alpha Kappa Alpha Sorority ("AKA")[1] and were given more favorable treatment due to their membership in AKA. *See* Miller Depo. at 79:11–81:18. However, Plaintiff admits he does not

---

[1] AKA is one of the largest "Greek" sorority organizations in the world, with over 300,000 members in over 1,000 chapters spread across all fifty U.S. States and five countries. *See* Montgomery Decl., ¶ 23.

know whether any of these employees was aware that any of the others was a member of AKA, and he does not know whether these employees went to the same universities or were members of the same AKA chapter. *See* Miller Depo. at 82:17–83:3.

From January 1, 2013 to December 31, 2018, Touro disciplined eighteen (18) Pharmacy Department employees for violations of the Code of Conduct, and of those disciplined, eleven (11) were female. *See* Montgomery Decl., ¶ 24. Since Plaintiff's termination in January 2018, Touro has disciplined two Pharmacy Department employees for sleeping or appearing to sleep on the job. *See* Montgomery Decl., ¶ 25. These sleeping incidents were both discovered in April 2021 by Dr. Montgomery when reviewing surveillance footage of the Pharmacy Department related to another employment matter. *See* Montgomery Decl., ¶ 25. One was a male Pharmacist who was issued a written warning for appearing to "nod off" several times during his shift; the employee was not terminated because it was not clear whether he was in fact sleeping or appearing to sleep while on duty. *See* Montgomery Decl., ¶ 26. The other was a female Pharmacy Technician who was observed sleeping while on duty for extended periods of time; like Plaintiff, she was immediately terminated as a result. *See* Montgomery Decl., ¶ 26. This makes clear that Touro enforces its disciplinary rules equally against males and females generally, and female Pharmacy Department employees are subject to termination for sleeping on the job as male Pharmacy Department employees.

## II.   LAW AND ARGUMENT

### A.  Motion for Summary Judgment standard

Fed. R. Civ. P. 56(a) provides:

> A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

2090820.v1

Summary judgment is appropriate where the evidence is such that no triable issues of fact exist and thus no reasonable jury could return a verdict for the nonmoving party. *Royal v. CCC & R Tres Arboles, LLC*, 736 F.3d 396, 400 (5th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party successfully establishes grounds for summary judgment, the onus shifts to "the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324. The court must "draw all reasonable inferences in favor of the nonmoving party" and "refrain from making credibility determinations or weighing the evidence[,]" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007), but mere "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2738 (2d ed. 1983)); *Stewart v. Smitty's Supply, Inc.*, No. CV 18-10058, 2020 WL 433362, at *1 (E.D. La. Jan. 28, 2020).

### B.  *McDonnell Douglas* framework for Title VII and ADA discrimination claims

Plaintiff alleges discrimination by Touro based on his gender (male) and his alleged disabilities. Individual claims for discrimination under Title VII and the ADA fall under the familiar *McDonnel Douglas* burden-shifting framework, wherein the Plaintiff relying on circumstantial, rather than direct, evidence of discrimination must first establish a *prima facie* case. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). In order to prove a *prima facie* case of

9

gender discrimination, Plaintiff must prove that: (1) he is a male, (2) he was qualified for his job, (3) he suffered an adverse employment action, and (4) he was treated less favorably than other similarly situated female employees under nearly identical circumstances. *Wesley v. Gen. Drivers, Warehousemen & Helpers Local 745,* 660 F.3d 211, 213 (5th Cir. 2011). Similarly, in the disability context, Plaintiff must prove that (1) he has a disability, (2) he was qualified for his job; and (3) he was subjected to an adverse employment action based on his disability. *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014) (citing *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999)). To satisfy the third element of the ADA *prima facie* showing, Plaintiff must either prove that he was replaced by a non-disabled person or was treated less favorably than non-disabled employees. *Burch v. Coca–Cola Co.*, 119 F.3d 305, 320 (5th Cir.1997).

If Plaintiff establishes a *prima facie* case, the burden shifts to Touro to provide a legitimate, non-discriminatory reason for the adverse employment action (*i.e.*, one based not on gender or disability). *Id. Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011). Touro's burden is one of production only, not of persuasion, since "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981).

Once Touro articulates a legitimate, non-discriminatory reason for the adverse employment decision—here, sleeping or appearing to sleep while on duty—Plaintiff must then provide evidence creating a genuine issue of material fact that (1) Touro's proffered reason is not true, but is instead a pretext for discrimination ("pretext" analysis), or (2) Touro's proffered reason, while true, is only one of the reasons for its conduct, and another motivating factor was the plaintiff's gender or alleged disabilities ("mixed motive" analysis). *Id.; Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (citations and internal quotation marks omitted); *see also Evans v.*

2090820.v1

*Tex. Dep't of Transp.*, 547 F. Supp. 2d 626, 640 (E.D. Tex.2007) (applying same analysis to cases under ADA), *aff'd*, 273 F. App'x. 391 (5th Cir. 2008). However, even if Plaintiff offers proof that his gender and/or alleged disabilities were motivating factors in Touro's decision to take adverse employment action against him—Touro may still establish, as an affirmative defense to liability, that it would have taken the same action even without consideration of Plaintiffs' protected trait. *See Smith v. Xerox Corp.*, 602 F.3d 320, 333 (5th Cir. 2010), abrogated on other grounds by *Univ. of Tex. S.W. Med. Ctr. v. Nassar*, 570 U.S. 338, 367 (2013).

### C. Plaintiff has failed to present a triable issue of fact as to gender or disability discrimination, and summary judgment should be granted.

Plaintiff alleges that he was terminated by Touro based on his gender and his alleged disabilities, including PTSD, anxiety, depression, chronic migraine headaches, back and hip pain. Regarding his gender discrimination claim, Plaintiff can offer no competent summary judgment evidence that the female employee who replaced him after his termination was similarly or less qualified for his position, or that female employees were treated more favorably than him with regard to disciplinary actions for sleeping on the job. Plaintiff cannot establish *prima facie* evidence of disability discrimination because he cannot demonstrate through competent summary judgment evidence that (1) Touro was ever aware that Plaintiff had a disability or needed an accommodation in order to perform his duties, or (2) he was replaced by a non-disabled individual or that non-disabled individuals were treated more favorably related to sleeping on the job. In addition to his inability to establish a *prima facie* case, Plaintiff also cannot provide any evidence that the legitimate, non-discriminatory reason for termination provided by Touro—sleeping or appearing to sleep while on duty—was false and pretextual, or that, despite the stated justification being true, Touro was nevertheless motivated by Plaintiff's gender and alleged disabilities in deciding to terminate him. Plaintiff therefore has not met his burden to survive summary judgment

either as to his *prima facie* case or his ultimate burden of persuasion on his gender and disability discrimination claims, and these claims must be dismissed.

> 1. <u>Plaintiff committed an immediately terminable offense by sleeping or appearing to sleep while on duty on several occasions.</u>

Touro's Code of Conduct and Performance Policy clearly prohibits sleeping while on duty **or** the appearance of sleeping while on duty, and permits immediate discharge of any employee found in violation without resort to a warning or progressive discipline. Plaintiff received and acknowledged that he was aware of this policy when he was hired. Yet, two fellow Pharmacists (Dr. Nguyen and Dr. Mai) reported to two separate members of Touro management (Dr. Doley and Dr. Montgomery) that they each observed Plaintiff sleeping or appearing to sleep while on duty during the night shift on several occasions.

Dr. Mai complained to Dr. Doley that she personally witnessed Plaintiff sleeping on December 21, 2017 (as well as on several other occasions). *See* Mai Decl., ¶ 6. Plaintiff admitted to having a good relationship with Dr. Mai and that she and his daughter were friends. His only explanation for why Dr. Mai would have potentially made a false accusation that he slept on the job was the specious claim that she was out for his job because she wanted to be on the night shift. There is no evidence to support Plaintiff's rank speculation on this point, and the evidence shows that Dr. Mai did not assume or even apply for Plaintiff's position on the night shift after his termination. *See* Mai Decl., ¶ 9.

Dr. Nguyen complained to Dr. Doley that she did not want to work on the night shift with Plaintiff because the last time she had been assigned to the night shift with him on September 29, 2017, he had slept for most of the shift in the IV room and had failed to answer calls or provide needed assistance. *See* Nguyen Decl., ¶ 5. Dr. Montgomery spoke with Dr. Doley regarding Dr. Nguyen's complaint and spoke directly to Dr. Mai and confirmed her account of Plaintiff's

2090820.v1

sleeping. *See* Montgomery Decl., ¶¶ 11–13. Thus, there is abundant testimony and other evidence that Plaintiff slept or appeared to sleep on the job on multiple occasions and failed to fulfill his job requirements. As a result, Dr. Montgomery recommended that Plaintiff be terminated, and Ms. Mousa agreed and approved the termination. On January 9, 2018, Plaintiff was terminated from Touro for sleeping or appearing to sleep while on duty in violation of Touro Policy No. HR 210.

While Plaintiff denies that he slept on the job on the dates he was observed by two fellow Pharmacists, he stated in his deposition that he "may have" fallen asleep at work at times "because of the medication" at that he would "put my drops in my eyes a few times and just put my head back." Miller Depo. at 163:18–23. But Plaintiff also admitted that he did not notify any supervisor or manager that he experienced migraines that would cause him to put his head down and have the appearance of sleeping, or that he took medication for the migraines that could cause drowsiness, because he claims it "was none of their business." Miller Depo. at 116:17–119:12.

Plaintiff further admitted that during the weeks in which he worked at Touro, he worked approximately 19 hours per day and 115 hours per week (approximately three times the number of hours in a standard 40-hour work week) between his full-time night shift position at Touro and his full-time day shift position at the VA Hospital. Miller Depo. at 161:5–162:2. Thus, regardless of whether Plaintiff was actually asleep or simply "appearing" to sleep, he was still in violation of Touro's policy. Further, because Plaintiff did not make his supervisors aware of a medical condition that would cause him to appear to be sleeping or napping, there was no opportunity for Touro to consider any reasonable accommodation that would have allowed Plaintiff to continue working on the night shift without violating Touro policy.

There is no doubt—and therefore no factual issue—that Plaintiff appeared to sleep on duty, and that he knew that such behavior was grounds for immediate termination.

2090820.v1

Courts in the Fifth Circuit have previously held that sleeping on duty in violation of an employer's policy is sufficient cause for termination and the decision is not brought into question by conclusory allegations of disability discrimination. In *Woodfolk v. Ormet Primary Aluminum Corp.*, 191 F. Supp. 2d 703 (M.D. La. 2001), the plaintiff alleged that he was terminated due to his race and disability in violation of Title VII and the ADA, and the employer asserted that the reason for his discharge was that he was discovered sleeping in the break room of the plant during his shift, thought the exact amount of time he slept on duty was not clear. *Id.* at 707–08. The employer provided evidence that its workplace rules prohibited sleeping during work hours on the plant premises and stated that employees in violation could be terminated immediately. *Id.* n.1. The employee alleged that employees of other races were not terminated for similar sleeping infractions, but the employer responded with evidence that this was due to previously lax application of the no sleeping/appearance of sleeping rule, which became more strictly enforced after a new manager was assigned to oversee labor relations between the company and the plant workers' union. *Id.* The company provided evidence of several other employees of different races who were similarly terminated for sleeping on the job after the rule began to be more strictly enforced. *Id.* at 708.

Similar to this case, the plaintiff in *Woodfolk* alleged that he had a medical condition that caused him to become drowsy while on the job, and that the medication he took for his high blood pressure caused side effects that limited his ability to work. *Id.* However, the district court held that there was no evidence demonstrating that the plaintiff's medical condition interfered with his ability to work or that he ever asked his employer for an accommodation for any disability. *Id.* Thus, the district court granted summary judgment to the employer and held that "[i]t is unfortunate

2090820.v1

that Ormet saw discharge as its only disciplinary measure in this matter, but its decision was a business one that is legitimately supported by the evidence." *Id.*

The same result must be reached here. It was determined through an investigation by Touro management, including review of two employee complaints, that Plaintiff slept or appeared to have slept while on duty on multiple occasions. Unlike the employer in *Woodfolk*, there is no evidence that Touro ever inconsistently applied its disciplinary rule providing that sleeping on the job is a terminable offense. Rather, the evidence shows that Touro disciplined eighteen (18) Pharmacy Department employees between January 1, 2013 and December 31, 2018 for Code of Conduct violations, eleven (11) of whom were female, and that two Pharmacy Department employees have been disciplined since his termination for sleeping or appearing to sleep on the job. Moreover, the only employee determined to have actually slept on the job since Plaintiff's termination was a female and she was terminated as a result. This uncontroverted evidence directly undercuts Plaintiff's claim that Touro decided to terminate him based on his gender. Further, as in *Woodfolk*, Plaintiff never communicated an alleged disability or any related limitations on his ability to perform his work to any supervisor or manager of Touro, so Dr. Montgomery and Ms. Mousa could not possibly have acted with discriminatory intent based on a disability when they collectively decided to terminate him.

2. Plaintiff has provided no evidence that he was treated less favorably than similarly-situated female or non-disabled employees.

To support his gender and disability discrimination claims, Plaintiff alleges that another Pharmacist, Dr. Karen Wells, brought a blanket into work and slept on the job multiple times but was not subjected to any discipline. *See* Complaint, R. Doc. 1, ¶¶ 22–24. However, Plaintiff admitted that he only worked with Dr. Wells occasionally when she covered for another of Plaintiff's co-workers who was out on vacation or for other reasons. *See* Miller Depo. at 113:21–

15

114:21. Importantly, Dr. Montgomery, the Director of Pharmacy who recommended Plaintiff's termination, states that she never received any complaint from an employee that Dr. Wells slept on the job, and no such complaints appear in Dr. Wells' employee personnel records. *See* Montgomery Decl., ¶ 22. Notably, Plaintiff has never stated that he actually witnessed Dr. Wells sleeping in the workplace while on duty, instead claiming only that she brought a blanket to work and would sometimes put it over her head, and that there were times when Dr. Wells did not answer her telephone or her officer door, which Plaintiff speculates, without any affirmative evidence, was due to her sleeping. **Tellingly, Plaintiff admits that he never reported Dr. Wells sleeping on the job to anyone at Touro until the date of his termination.** *See* Miller Depo. at 138:15–25; 2471–248:5. Further, as confirmed by Dr. Montgomery, it is common for Pharmacists to bring blankets into work because the Pharmacy Department is kept at a low temperature and can be uncomfortably cold at times, so Dr. Wells' having a blanket is not indicative of sleeping on duty. Thus, Plaintiff's conclusory allegation that Dr. Wells committed the same infraction yet was not disciplined is entirely unsupported by competent summary judgment evidence and fails to raise a genuine factual issue.

Additionally, Plaintiff's allegations regarding perceived gender bias by female Pharmacy Department managers are unsupported by any evidence. Plaintiff alleges that of the more than fifty (50) members of the Pharmacy Department, five (5) employees (Ms. Oliver, the Operations Manager; Dr. Montgomery, the Director of Pharmacy; and Pharmacists Dr. Philomene Allain, Dr. Van Buren, and Dr. Wells) were members of the Alpha Kappa Alpha Sorority ("AKA"). AKA is an international service and philanthropic Greek organization with over 300,000 members in over 1,000 separate chapters. *See* Montgomery Decl., ¶ 23. As a result, Plaintiff alleges, without any specific corroborating facts, that these employees gave preferential treatment to each other, but he

16

admits that he has no idea whether any of them went to the same universities, were members of the same chapters, or even whether they knew that each other were members of AKA. *See See Miller Depo.* at 82:17–83:3. Plaintiff's completely hollow and speculative allegations on this point should be disregarded.

Plaintiff also admittedly has no evidence regarding the qualifications of Dr. Van Buren, the female Pharmacist who was promoted to fill Plaintiff's position after his termination. When asked in his deposition about Dr. Van Buren's educational and work history, Plaintiff stated that "[a]ll I know is she's a pharmacist . . . . I had never met her and never heard of her in my life." Without any proof as to Dr. Van Buren's prior work experience, her academic credentials, her licensure and certifications, and her abilities as a Pharmacist, Plaintiff cannot show that he was replaced by a similarly-qualified or less-qualified individual outside of his protected categories, and he fails to satisfy this prong of the *prima facie* analysis, as well. *See Guerin v. Pointe Coupee Par. Nursing Home*, 246 F. Supp. 2d 488, 498 (M.D. La. 2003) (granting summary judgment to employer where plaintiff alleging race discrimination failed to make *prima facie* showing that she was replaced by a person outside of her race with similar qualifications).

Plaintiff's *prima facie* claim of disability discrimination suffers from yet another fatal flaw, as he can produce no evidence that either Dr. Wells or Dr. Van Buren was non-disabled. Plaintiff has an affirmative burden of proof as to each of the *prima facie* elements of his disability claim, and failure to satisfy any one element must result in summary judgment. As a result, Plaintiff's inability to offer proof that the alleged "comparators" whom he claims were treated more favorably were non-disabled is fatal to his ADA discrimination claim. *See Dupre v. Harris Cty. Hosp. Dist.*, 8 F. Supp. 2d 908, 920 (S.D. Tex. June 12, 1998) (granting summary judgment to employer on ADA discrimination claim after holding that "There is no evidence before the court indicating that

17

Dupré was replaced by a non-disabled individual" or that "other similarly situated, non-disabled employees, who were charged with comparable infractions, were not placed on probation.")

The fact that Touro continues to uniformly enforce its no sleeping/appearance of sleeping policy is demonstrated by Touro's termination of a female Pharmacy Technician in April 2021 for sleeping while on duty and issuing of a warning to a male Pharmacist who appeared in surveillance video to be "nodding off" while on duty; in the latter instance, the male employee was issued a warning because the sleeping violation could not be confirmed. *See* Montgomery Decl., ¶¶ 25–26. On the other hand, here the undisputed evidence shows that Plaintiff's violation of the no sleeping/appearance of sleeping rule was supported by two eye-witness accounts, and the language of Touro Policy No. HR 210 unambiguously provided for termination of employees who slept or appeared to sleep while on duty in violation of the policy. *See* Montgomery Decl., ¶¶ 14–15; *Code of Conduct and Performance* Policy. There is no evidence that Touro treated similarly situated female or non-disabled employees more favorably in enforcing this policy, and Plaintiff thus fails as a matter of law to establish a *prima facie* case of discrimination under Title VII or the ADA.

3. <u>Touro had a legitimate, non-discriminatory reason for terminating Plaintiff, and there is no evidence of pretext</u>

Under Fifth Circuit law, any presumption of discriminatory intent raised by Plaintiff's *prima facie* case—which is fatally deficient, as set forth *supra*—dissolves once Touro produces a legitimate, non-discriminatory reason for terminating Plaintiff. *See Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507–10 (1993)). Touro's burden is merely one of production and not of persuasion. *See Burdine*, 450 U.S. at 257–58. "If the employer produces any evidence 'which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action,' then the employer has satisfied its burden of production." *Daigle*, 70 F.3d at 396 (quoting *Hicks*, 509 U.S. at 507.

2090820.v1

Here, Touro's burden has been met, since the evidence demonstrates that Plaintiff was terminated for sleeping or appearing to sleep while on duty and for failure to fulfill job requirements in violation of Company policy. *See LHC Grp.*, 773 F.3d at 701–02 ("Terminating an employee whose performance is unsatisfactory according to management's business judgment is legitimate and nondiscriminatory as a matter of law.") (citing *Walton v. Bisco Indus., Inc.*, 119 F.3d 368, 372–73 (5th Cir. 1997), and *Smith v. Rockwell Int'l Corp.*, 77 F.3d 473, 473 (5th Cir. 1995)). Both Dr. Montgomery and Ms. Mousa testified that their investigation into Dr. Nguyen and Dr. Mai's complaints provided sufficient evidence that: (1) Plaintiff had violated Touro Policy No. HR 210 by sleeping or appearing to sleep on the job on September 29, 2017 and December 21, 2017; and (2) that Dr. Nguyen's statement that Plaintiff slept through most of his shift on December 21, 2017 and failed to answer calls and requests for assistance constituted a further violation of the policy by failing to fulfill job requirements. Dr. Mai and Dr. Nguyen have both confirmed that they personally observed Plaintiff sleeping or appearing to sleep while on duty on multiple occasions and that they reported this to Dr. Montgomery and Dr. Doley.

Accordingly, with Touro's burden to produce a legitimate, non-discriminatory reason satisfied, the burden of persuasion shifts back to Plaintiff to prove through admissible evidence that Touro's proffered reasons were false and pretextual, or alternatively, were true but were only a factor in Touro's decision to terminate, with the other factor being discrimination based on gender or disability. Plaintiff has not and cannot make any such showing. "The evidence of pretext must be more substantial than pure speculation; a plaintiff must provide sufficiently specific reasons for her allegations of pretext." *Dupre*, 8 F. Supp. 2d at 923 (citing *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996)). "The employer, of course, will be entitled to summary judgment if the evidence taken as a whole would not allow a jury to infer that the actual reason for

19

the discharge was discriminatory." *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 994 (5th Cir. 1996), *rev'd on other grounds by Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133 (2000).

Plaintiff's only argument as to pretext will be that Dr. Wells also slept on the job yet was not disciplined. But, as established *supra*, Dr. Montgomery never received any complaint that Dr. Wells slept on the job and no such complaint appears in Dr. Wells' personnel records. *See* Montgomery Decl., ¶ 22. And Plaintiff admits that he never reported Dr. Wells for supposedly sleeping on the job despite Plaintiff's allegation that he saw her with a blanket on her head and assumed she was sleeping on duty. *See* Miller Depo. at 138:15–25; 2471–248:5. Finally, the evidence shows that Touro has continued to enforce its no sleeping/appearance of sleeping policy, including the recent termination of a female Pharmacy Department employee who was found to be sleeping on duty. *See* Montgomery Decl., ¶¶ 25–26. Therefore, Plaintiff cannot establish that Touro's decision to terminate him for a serious policy violation was false and pretextual or was motivated to any degree by Plaintiff's gender or alleged disabilities that were unknown to Touro.

Touro maintains that it was absolutely correct in its conclusion that Plaintiff, on more than one occasion, slept or appeared to sleep on the job. However, even if this conclusion proved incorrect, the pretext inquiry is limited to whether the employer believed the allegations in good faith and whether the decision to discharge was based on that belief. *See Cervantez v. KMGP Services Co., Inc.,* 349 F. App'x. 4 (5th Cir. 2009) ("[A] fired employee's actual innocence of his employer proffered accusation is irrelevant as long as the employer reasonably believed it an acted on it in good faith."); *Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398 (5th Cir. 1999) ("The issue is whether [a defendant's] perception of performance, accurate or not, was the real reason for her termination."); *Waggoner v. City of Garland Tex.* 987 F.2d 1160, 1165 (5th Cir. 1993) ("The inquiry is limited to whether the employer believed [the allegations] in good faith and

2090820.v1

whether the decision to discharge the employee was based on that belief.") *DeAnda v. St. Joseph Hosp.,* 671 F.2d 850 (5th Cir. 1982) ("Whether [an employer] was wrong in its determination . . . is irrelevant, as long as its belief, though erroneous, was the basis for the termination.")

### 4.   There is no evidence that Touro knew of a disability or intended to discriminate against Plaintiff based on a disability

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a). An employee asserting a disability discrimination claim must produce evidence that the employer not only knew of the employee's disability, but also of the physical and mental limitations arising from it. *Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir.1999); *Williamson v. Am. Nat. Ins. Co.*, 695 F. Supp. 2d 431, 445 (S.D. Tex. 2010). To be considered "disabled" under the ADA, a plaintiff must suffer from "a physical or mental disability that substantially limits one or more major life activities of such individual; ... [have] a record of such an impairment; or ... be[ ] regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A).

Plaintiff can proffer no evidence that he had a disability in December 2017 that prevented him from being able to perform his duties as a night shift Pharmacist. Instead, Plaintiff relies on a pair of FMLA requests that he submitted to Touro in November 2013 and October 2015, four and two years before his termination, respectively, in which his treating physician provided a medical certification referencing Plaintiff's PTSD diagnosis and related symptoms. However, there is no evidence that Plaintiff's medical condition interfered with his ability to perform his duties prior to

2090820.v1

his termination, **or that he ever notified any supervisor or manager that he was in need of an accommodation in light of his PTSD**. In fact, Plaintiff testified that even in 2015 (the year that he took medical leave related to his PTSD), his symptoms did not interfere with his work:

> Q:  How did your anxiety, depression, and PTSD symptoms affect your work as a pharmacist during that time period of around 2015?
>
> A.  Oh, I could do my work. I was able to do my work. If you are talking work, work, I love work.
>
> Q:  So it didn't interfere with your ability to perform your duties?
>
> A:  It, you know—at times, the focus factor, you know, sometimes it's hard to focus, but it don't mean you can't get the job done.

Miller Depo. at 95:6–16.

Thus, Plaintiff has failed to demonstrate that his PTSD actually limited him in a major life activity at the time of his termination **or** that Touro was ever aware that he had PTSD or needed an accommodation. *See Espinoza v. Brennan*, No. EP-14-CV-290-DB, 2016 WL 7176663, at *7 (W.D. Tex. Dec. 7, 2016) (While " 'the threshold to show that PTSD substantially limits a major life activity is particularly low[,]' . . . . Mr. Espinoza does not meet this low threshold because he cites no evidence whatsoever to show that his disorder substantially limits his brain function or any other major life activity.") (citing 29 C.F.R. § 1630.2 (j)(3)(iii)).

Nor has Plaintiff provided any evidence that Touro knew of any disability or regarded Plaintiff as being disabled. *See Hamilton v. S.W. Bell Tel. Co.*, 136 F.3d 1047, 1051–52 ("For an employer to regard an impairment as substantially limiting work, the employer must regard an individual as significantly restricted in his ability to perform a class or broad range of jobs.") (citing *Burch*, 119 F.3d at 322, and *Bridges v. City of Bossier*, 92 F.3d 329, 332(5th Cir. 1996)); *see also Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 192 (5th Cir. 1996) ("[A]n employer does not necessarily regard an employee as having a substantially limiting impairment simply because it

22

believes she is incapable of performing a particular job.") Notably, in *Hamilton*, the Fifth Circuit held that an employee who was terminated for his angry and profanity-laden outburst against a co-worker, which he attributed to PTSD, had no viable ADA discrimination claim because there was no evidence that his employer regarded him as disabled or perceived that he was limited in any major life activities, and his termination was justified regardless since his conduct was in violation of the company's workplace violence policy. *Hamilton*, 136 F.3d at 1052. The present case exhibits similar facts, as Touro had no notice of any disability or any indication that Plaintiff was limited in his ability to perform work or any other major life activity, and Plaintiff's sleeping or appearing to sleep on the job, as reported by two other Pharmacists, was a clear violation of Touro's policy that merited immediate termination.

Kishia Hughes ("Ms. Hughes"), the HR Generalist who was responsible for processing all requests for FMLA and non-FMLA medical leave by Touro employees at the time of Plaintiff's termination, testified in her deposition, under cross-examination by Plaintiff's counsel, that the FMLA paperwork submitted by employees, including the physician certification documents that may reference medical diagnoses or treatment, are kept strictly confidential pursuant to policy and are not accessible by any Touro employee.  Ms. Hughes, in her capacity as the leave of absence administrator, was the only employee who had access to the paperwork regarding Plaintiff's September 2015 FMLA request that mentioned his PTSD. *See* Miller Depo. at 269:16–271:5. Plaintiff admitted that he never notified his supervisors or any member of management that he had PTSD or any other disability that limited his ability to perform his duties. *See* Miller Depo. at 119:5–15; 120:24–122:22. As a result, the two decision-makers related to his termination, Dr. Montgomery and Ms. Mousa, were not aware that Plaintiff was disabled or claimed a disability and did not regard him as disabled. *See* Montgomery Decl., ¶ 19. Moreover, even if Dr.

Montgomery or Ms. Mousa had known that Plaintiff had PTSD in September 2015, which is denied, this would not equate to knowledge that he suffered from that disability over two years later in December 2017 when the complaints of him sleeping on the job were received. *See Stewart*, No. CV 18-10058, 2020 WL 433362, at *8 ("An employee may be temporarily disabled in that they are at one point disabled, but later recover and no longer suffer from the disability.")

Plaintiff's subjective and speculative assertions that his termination was caused by disability-based animus cannot withstand summary judgment. In *Stewart*, Judge Vance was confronted with a similar situation involving a plaintiff alleging that she was terminated because of a knee injury that limited her ability to perform manual labor, and held:

> [P]laintiff cannot establish the third element of a disability discrimination claim—that she was subject to an adverse employment decision on account of her disability. The sole piece of evidence that plaintiff puts forth to establish a connection between her purported disability and her termination is one paragraph in her affidavit, in which she conclusorily states: "I believe I was fired due to an actual or perceived disability...." But plaintiff points to no evidence to support this belief. And the plaintiff's subjective belief of discrimination is not sufficient to survive summary judgment. *See Little*, 924 F.2d at 96. And more generally, this unsupported allegation sets forth a conclusory fact, which also is not sufficient to defeat a motion for summary judgment. *See Galindo*, 754 F.2d at 1216.

*Stewart*, No. CV 18-10058, 2020 WL 433362, at *9. This analysis applies with full force here.

Not only common sense, but also *Feist v. Louisiana Department of Justice*, 730 F.3d 450, 452 (5th Cir. 2013) require that in order to establish a failure to accommodate claim under the ADA, Plaintiff must prove that Touro knew of his disability before his termination. *See also Simon v. Schlumberger Tech. Corp.*, No. 13-CV-3074, 2015 WL 3952739, at *12 (W.D. La. June 26, 2015), *aff'd*, 633 F. App'x 238 (5th Cir. 2016) (employee's accommodation request came too late since the decision to terminate had already been made). Plaintiff admits that he never informed anyone at Touro during his employment that he had a disability or took medication that limited his ability to perform work, but claimed that he stated during his January 9, 2018 termination meeting

2090820.v1

that he was a "disabled vet" and took medication that could "make him sleepy." Miller Depo. at 119:9–120:23, Even if true, which is denied, this would not salvage his claim from dismissal. An employee cannot avoid termination by referencing a disability or requesting an accommodation after committing a terminable offense. *See Johnson v. Parkwood Behavioral Health Sys.*, 2013 WL 1827585 (N.D. Miss. 2013), *aff'd*, 551 F. App'x 753 (5th Cir. 2014) ("[T]he ADA does not insulate an employee from adverse action taken by an employer because of misconduct in the workplace, even if his improper behavior is arguably attributable to an impairment."); *Tate v. Ancell*, 551 F. App'x 877, 886 (7th Cir. 2014) (employee's termination for sleeping during training sessions was not discriminatory based on disability; his statement during a disciplinary proceeding that he suffered from sleep apnea was insufficient to overcome violations of company policy prohibiting sleeping on the job).

## III.   CONCLUSION

There is no genuine, material factual issue for trial in this case; in fact, the undisputed material facts demonstrate that Plaintiff cannot prove his claims of gender and disability discrimination against Touro. Rather, the evidence shows that Plaintiff was terminated for violating Touro policy by sleeping or appearing to sleep while on duty on several occasions. Plaintiff cannot show that Touro's legitimate, non-discriminatory reason for his termination was pretextual or that Touro was motivated in any way by his gender or disability, and therefore his claims fail under the *McDonnell Douglas* standard. Accordingly, and for all of the foregoing reasons, Touro Infirmary requests that this Honorable Court grant its Motion and enter summary judgment in its favor, dismissing all of Plaintiff's claims in this action with prejudice.

2090820.v1

Respectfully submitted:

*/s/ Matthew M. McCluer* _____

**BREAZEALE, SACHSE & WILSON, L.L.P.**
Peter J. Butler, Jr., La. Bar Roll No. 18522
Matthew M. McCluer, La. Bar Roll No. 33970
LL&E Tower, Suite 1500
909 Poydras Street
New Orleans, LA 70112-4004
Telephone: (504) 619-1800
Fax: (504) 584-5452

Melissa M. Shirley, La. Bat Roll No. 25248
301 Main Street, 23rd Floor
Baton Rouge, Louisiana 70821-3197
Telephone:  225-387-4000
Fax:  225-381-8029

***Attorneys for Defendant, Touro Infirmary***