UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RICHARD MILLER** | **CIVIL ACTION NO.: 2:20-CV-3044** |
| **VERSUS** | **JUDGE:  LANCE M. AFRICK** |
| **TOURO INFIRMARY** | **MAGISTRATE:  DONNA PHILLIPS CURRAULT** |

**REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

Touro implores the Court to review the deposition excerpts cited in the parties' Memoranda.   Plaintiff has taken liberties in describing testimonies; Touro has not.

**1. Progressive discipline was not necessary or appropriate**

It is undisputed that Touro Policy HR 210 states: "sleeping on duty or appearance of sleeping on duty" constitutes a "[v]iolation which may result in immediate discharge[.]"[1] Plaintiff admits receiving and reading the Touro Employee Handbook, and he admits it states that there is no progressive discipline required for sleeping/appearing to sleep.[2] This was fully corroborated by the cited deposition testimonies of Pharmacy Director Tara Montgomery and former HR Director Cindy Mousa, the only decision-makers involved in terminating Plaintiff[3] for sleeping/appearing to sleep. Thus Plaintiff's arguments that he should have received progressive discipline prior to termination are irrelevant and inapplicable.

Plaintiff argues that Touro issued a warning to *male* Pharmacist Dr. Timothy Smith in April 2021 (three years after Plaintiff was terminated) for sleeping.[4] However Plaintiff omits two key established facts. First, Pharmacy Director Montgomery testified in Touro's 30(b)(6) deposition that when she discovered Smith "nodding" his head several times during his shift (not actively

---

[1] R. Doc. 33-8, Pl. Opp. Ex. H, Policy No. HR 210.
[2] R. Doc. 30-5, Touro MSJ Ex. B, Miller Depo., at 165:3–166:1; R. Doc. 33, Pl. Opp., p. 8, n. 58.
[3] R. Doc. 33-4, Pl. Opp. Ex. D, Montgomery Depo., at 58:6-12; R. Doc. 33-5, Pl. Opp. Ex. E, Mousa Depo., at 43:17–44:2.
[4] Pl. Opp., p. 8.

1

sleeping as Plaintiff was observed doing), she was reviewing security camera footage and this review resulted in only a warning since she could not confirm by video that Smith was sleeping.[5] Second, Montgomery also observed *female* Pharmacy Technician Amanda Coleman sleeping on duty; Coleman was immediately terminated after Montgomery confirmed her sleeping.[6]

### 2. Touro fully investigated the complaints against Plaintiff

Plaintiff attempts to sow confusion by stating the termination form issued for him did not provide specific details regarding the status of a patient for whom Plaintiff failed to provide an IV order. No such detail in a termination form is required. Moreover the actual termination form[7] reflects the pertinent details regarding Plaintiff's sleeping/appearing to sleep and his failing to perform his duties as set forth in a narrative of two separate complaints by Plaintiff's two co-workers who witnessed Plaintiff sleeping on September 29, 2017 and December 21, 2017: pharmacists Dr. Kawita Mai (*née* Mandhare) ("Mai") and Dr. Jennifer Nguyen. Plaintiff cites no evidence to contradict the sworn statements of Mai and Nguyen that each personally observed Plaintiff sleeping on duty on September 29, 2017, December 21, 2017, and multiple other occasions. Instead, Plaintiff attempts to discredit their testimony as "conclusory" and "speculative" because they did not state such unnecessary details as the distance they stood from Plaintiff at the time they observed him sleeping, how long they observed him, and whether his eyes were closed.[8] Plaintiff also mischaracterizes evidence that Mai reported on January 3, 2018 that she observed Plaintiff sleeping on duty on December 21, 2017, a "date certain".  The complaints were not, as Plaintiff suggests, limited to "unspecified times in the past."[9]

---

[5] Touro Depo., at 31:15 – 32:23
[6] Touro Depo., at 30:12-21
[7] R. Doc. 30-7, Touro MSJ Ex. D, Termination Form.
[8] Plaintiff knows that Mai's and Nguyen's sworn statements are fatal to his claims. He desperately attempts to create a factual dispute that does not exist by filing a Motion to Strike these declarations (R. Doc. 34).
[9] R. Doc. 30-9, Touro MSJ Ex. F, 1/3/18 Email, p.1.

Plaintiff also mischaracterizes Montgomery's deposition testimony regarding the "fellow Pharmacist" whom, according to Mai's complaint, fell behind in her work due to Plaintiff's sleeping.[10] Montgomery's testimony makes clear that the termination form identifies Nguyen as the Pharmacist whose work was impacted on September 29, 2017 (also a date certain).[11] It was these complaints by fellow employees that triggered Montgomery's investigation of Miller.

Plaintiff also asserts in Opposition that Montgomery and Mousa did not perform an adequate investigation of the complaints despite the undisputed summary judgment evidence that: (1) on December 21, 2017, Nguyen affirmatively complained to Pharmacy supervisor Doley that she did not want to work with Plaintiff on the night shift because he previously slept on the job on September 29, 2017 (a date certain), resulting in her having to cover for him; (2) Mai also complained to Doley that she observed Plaintiff sleeping on the job on December 21, 2017(another date certain) and multiple other occasions, particularly in the dispensing area of the Pharmacy Department; (3) Plaintiff admitted that he worked on December 21, 2017[12] and does not deny that he worked on September 29, 2017, the two dates certain that he was observed sleeping; (4) Doley reported these incidents (including date-certain incidents) to Montgomery, who spoke directly to Nguyen and Mai to confirm their accounts; (5) on or about January 4, 2018 Montgomery conferred with Mousa and determined that Plaintiff's sleeping/appearing to sleep on dates certain September 29, 2017 and December 21, 2017 was a clear violation of Policy HR 210 and grounds for immediate termination; and (6) on January 9, 2018, Montgomery and Mousa met with Plaintiff and determined that his denial of sleeping was not truthful. There was no other investigative step required to be taken by Pharmacy Director Montgomery or HR Director Mousa.

---

[10] Pl. Opp., p. 5 n.35
[11] R. Doc. 33-4, Pl. Opp. Ex. D, Montgomery Depo., at 45:1–48:20.
[12] R. Doc. 30-5, Touro MSJ Ex. B, Miller Depo., at 172:2–3; R. Doc. 33-3, Pl. Opp. Ex. C, Miller Depo., at 178:9–179:22.

2096587.v1

Plaintiff's suggestion that Touro should have reviewed **surveillance footage** is irrelevant and misplaced. Montgomery testified that the only reason security camera footage was reviewed in the situations involving Smith (male) and Coleman (female) in April 2021 (over 3 years after Plaintiff was terminated) was because she was investigating a separate employment matter when she observed Smith nodding and Coleman sleeping on duty.[13]  More importantly, Touro did not have cameras in the Pharmacy Department in 2017, so no such video evidence of Plaintiff sleeping could exist.[14]

Finally, Plaintiff's focus on an April 27, 2017 photograph of Plaintiff taken by Mai is irrelevant as that photograph was not a basis for Plaintiff's termination as shown by the termination form and Montgomery's testimony.

### 3. Plaintiff misleadingly cites Evelyn Lacey's testimony.

Plaintiff's only purportedly supporting witness testimony comes from Pharmacy Technician Evelyn Lacey ("Lacey"). Under oath Lacey could identify only two individuals whom she observed sleeping or nodding off in the 14 years in which she worked at Touro, the first being a man named Lawrence Jackson[15] who left Touro before Plaintiff was hired[16], and the other being Pharmacist Dr. Karen Wells ("Wells").[17] But Lacey testified that she never reported either for sleeping.[18] Without a report to a supervisor that an employee was sleeping (such as the two made against Plaintiff), it was impossible for anyone at Touro to investigate, let alone discipline,

---

[13] R. Doc. 33-15, Pl. Opp. Ex. O, Touro Depo., at 34:4–35:11.
[14] *See* R. Doc. 33-6, Pl. Opp. Ex. F, Touro Resp. 1st Interrogs./Req. Produc., p. 11, Req. No. 4; Ex. A, Supplemental Declaration of Tara Montgomery, ¶ 2. The Supplemental Declaration is allowed as Plaintiff has argued in his Opposition that camera footage "should have been reviewed," to which Touro is entitled to respond, and the Supplemental Declaration states facts that were already known to Plaintiff and his counsel that do not qualify as "new evidence" necessitating any further opportunity for response from Plaintiff. *See Vais Arms, Inc. v. Vais*, 383 F.3d 287, 292 n.10 (5th Cir. 2004) ("[A] district court may rely on arguments and evidence presented for the first time in a reply brief as long as the court gives the nonmovant an adequate opportunity to respond.")
[15] R. Doc. 33-16, Pl. Opp. Ex. P., Lacey Depo., at 23:23–24:7.
[16] R. Doc. 33-16, Pl. Opp. Ex. P., Lacey Depo., at 27:25–28:6.
[17] R. Doc. 33-16, Pl. Opp. Ex. P, Lacey Depo., at 16:6–16:7; 23:23–25.
[18] R. Doc. 33-16, Pl. Opp. Ex. P, Lacey Depo., at 29:1–13.

someone for sleeping. Thus, even if Lacey witnessed female Wells sleeping every day, if neither she nor anyone else reported it, Touro cannot be criticized for not disciplining Wells.

Moreover, in arguing that Touro discriminated against males in the enforcement of its policy prohibiting sleeping or the appearance of sleeping,[19] Plaintiff significantly mischaracterizes Lacey's deposition testimony by arguing that "[a]t some unknown point, Lacey reported to Touro's HR that pharmacist Karen Wells slept while on duty."[20] Plaintiff cites to a portion of Lacey's deposition where she states that, to the best of her recollection, in 2018 or 2019, **after Plaintiff's termination**, she was interviewed by a member of Touro's HR Department and she stated that she had observed Wells' sleeping.[21] This is a blatantly misleading statement by Plaintiff. As Touro proved in its Motion through the sworn statement of Montgomery, and as confirmed by Lacey herself, prior to Plaintiff's termination Touro never received any complaint from Lacey or anyone else regarding Wells' sleeping on the job, and no such complaints or disciplinary action is contained in Wells' personnel file.[22]

Notably, when directly asked, even Lacey admitted that *she never witnessed male Pharmacists being treated any differently than female pharmacists.*[23]

### 4. FMLA requests to Kishia Hughes are not knowledge by Touro of a disability.

Touro's HR Generalist Kishia Hughes ("Hughes") served as the administrator responsible for processing employee medical leave and disability accommodation requests from July 2013 to the present.[24] Critically Plaintiff admits that he submitted FMLA leave requests only to Hughes—and no one else—prior to the 2017 reports of him sleeping and he is unaware of Hughes' sharing

---

[19] Pl. Opp., p. 2.
[20] Pl. Opp., p. 13.
[21] R. Doc. 33-16, Pl. Opp. Ex. P, Lacey Depo., at 15:2–16:7, 21:5–20; 22:6-14 (referring to Plaintiff as "former employee").
[22] R. Doc. 30-4, Touro MSJ Ex. A, Montgomery Decl. ¶ 22; R. Doc. 33-16, Pl. Opp. Ex. P, Lacey Depo. at 29:1-13.
[23] R. Doc. 33-16, Pl. Opp. Ex. P, Lacey Depo., at 14:3–6.
[24] (R. Doc. 30-12, Touro MSJ Ex. I, Touro Depo., at 50:21–51:18, 74:22–76:16.)

those requests with anyone.[25] As set forth in Touro's original Memorandum in Support, to protect the confidentiality of its employees' medical conditions, Touro, like many employers, has established a department independent from its standard Human Resources functions to consider leave and disability accommodation requests by employees.  In Touro's 30(b)(6) deposition, Hughes confirmed that since her employment in July 2013, all employees' completed FMLA paperwork is seen only by  "HR generalist" Hughes; [26] and that "absolutely" Hughes does "not give those forms to anybody".[27] There is simply no evidence that Montgomery or Mousa (who actually made the decision to terminate) had any knowledge of Plaintiff's alleged disabilities, including those specifically requested several years earlier by Plaintiff only to Hughes. The law is crystal clear that knowledge by non-managerial officials—in this case, Hughes—of an employee's disabled condition or limitations is not imputed to and does not constitute knowledge of other Touro officials who actually make termination decisions—here, Montgomery and Mousa.[28]

In fact Plaintiff admits Montgomery and Mousa's lack of knowledge in his deposition Plaintiff initially surmised that they knew of his disability "through the FMLA" leave process.  But in response to specific questioning on whether he knew if they or Operations Manager Sharon Oliver actually knew the nature of any disabilities or limitations, Plaintiff[29] admitted that as

---

[25] (R. Doc. 30-5, Touro MSJ Ex. B, Miller Depo., at 269:16–271:5.)
[26] Touro Depo., 57:15-59:25
[27] Touro Depo., at 60:1-6.
[28] *See, e.g., Miles-Hickman v. David Power Homes, Inc.*, 589 F. Supp. 2d 849, 865 (S.D. Tex. 2008) (supervisor honored plaintiff's accommodation requests to avoid cigarette smoke, cologne, and pesticides in plaintiff's work area due to her sensitivity to strong fragrances; court held that supervisor was non-managerial and thus his knowledge of plaintiff's disability was not imputed to the company absent evidence of corporate management knowledge or approval of accommodation requests); *see also Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 571–72 (7th Cir. 1997) (intermediate supervisor's knowledge of employee's bipolar disorder could not be imputed to manager who made decision to terminate). The cases cited by Plaintiff on this issue are not instructive as they involved employers who had actual knowledge of employees' disabilities or limitations as established through evidence. *See Schmidt v. Safeway, Inc.*, 864 F. Supp. 991 (D. Ore. 1994) (employer knew that employee had previously received treatment for alcohol abuse and was thus aware of his alcoholism)*; Lambert v. Nat'l R.R. Passenger Corp.*, 2015 WL 1967044 (C.D. Cal. Apr. 29, 2015) (supervisors held on notice of employee's disability that was specifically addressed in disciplinary proceedings and referenced in hearing officer's report).
[29] R. Doc. 30-5, Touro MSJ Ex. B, Miller Depo., at 218:23–219:9.

supervisors, Montgomery, Mousa, and Oliver would not have known the reasons for him taking FMLA leave because medical certification forms are confidential patient records that are not provided to them.[30] Most importantly, Plaintiff admitted (twice) that he does not know what Montgomery, Mousa, or Oliver knew regarding his disabled status, stating point-blank at one point: "I don't know what they know."[31] Finally Plaintiff was reduced to admitting under oath: "I just turned in my FMLA paperwork to HR. What happens with it after that, I don't know."

Fortunately, Touro does know exactly what happened to Plaintiff's "FMLA paperwork" and has presented unchallenged testimony that no one other than Hughes knew what was in those records. Hughes testified in Touro's deposition that employee leave records are not accessible to any other manager or employee (including HR employees such as Mousa) and that the contents of those records are never divulged to any other manager or employee even if requested.[32] Hughes never communicates any diagnostic or medical information to an employee's supervisor or manager, but only the limitations, *if any*, resulting from her review of the employee request. For example, the most detail that Hughes would provide to a supervisor or manager is that an employee "could not lift more than $x$ pounds" or "could not work more than $x$ hours per day or per week."[33]

Of course Plaintiff was not prohibited from himself informing a supervisor of a leave or accommodation request, but he admits he did not so inform his supervisors.[34]  But, even taken at his word, Plaintiff admitted in his deposition, and confirmed in his Opposition, that he only advised Montgomery/Oliver that he was a "disabled Vet," which is not sufficient notification of a specific disability or limitation.[35] Although Plaintiff admitted in his deposition that he never informed any

---

[30] R. Doc. 30-5, Touro MSJ Ex. B, Miller Depo., at 219:25–220:18.
[31] R. Doc. 30-5, Touro MSJ Ex. B, Miller Depo., at 220:9–14.
[32] R. Doc. 30-12, Touro MSJ Ex. I, Touro Depo., at 63:4–20.
[33] R. Doc. 30-12, Touro MSJ Ex. I, Touro Depo., at 65:13-66:6.
[34] R. Doc. 30-5, Touro MSJ Ex. B, Miller Depo., at 218:23–220:18.
[35] *See Johnson v. E. Baton Rouge Sch. Sys.*, No. 16-422-SDD-RLB, 2019 WL 454590, at *4 (M.D. La. Feb. 5, 2019)*, appeal dismissed*, No. 19-30128, 2019 WL 3948779 (5th Cir. Mar. 7, 2019) (employee's bare statement to management that she was requesting an accommodation under the ADA, without any description of a specific

supervisor at Touro of his PTSD diagnosis, he now implies in his non-evidentiary Opposition that he notified Oliver of his PTSD when he requested a scheduling change in 2013, which directly contradicts his own prior statements. On this point, compare Plaintiff's deposition testimony:

> Q. What, specifically, did you say to Oliver when you asked to be moved to a different shift, if you recall?
> A. I told her -- I think I remember talking to her. I said, I'd like to go to the evening shift. I'm having a hard time adjusting to the things going on here and I don't want to conflict with any of the employees.
> Q. Is that all you said?
> A. Basically.

to the following statement in his Opposition: "Around 2013 Plaintiff was having difficulties with the amount of noise and the number of people working on the day shift. *Because of these PTSD symptoms*, he only requested that Oliver move him to the evening shift."[36] Tellingly, Plaintiff's Opposition does not argue that he actually referenced or otherwise put Oliver on notice of his PTSD, but *merely that he requested a schedule change* to avoid conflicts with co-workers.

Finally and ironically, Plaintiff is now a supervisor at the local VA hospital.[37] He admitted in two places in his deposition that, just like supervisors at Touro, he, as a VA supervisor, does not received the medical portion of employee leave requests.[38] Supervisors simply do not know employee's medical conditions (and Plaintiff knows that).

There is absolutely no testimony or other evidence that Oliver, Montgomery or Mousa was ever made aware, by Plaintiff or by anyone else, that Plaintiff had PTSD or experienced any limitations as a result of such condition

---

disability or limitation for which she was seeking accommodation, was not sufficient to prove employer "regarded her" as disabled, and summary judgment to employer was granted); *Gruber v. Entergy Corp.*, No. 96-1409, 1997 WL 149966, at *3 (E.D. La. Mar. 24, 1997) ("[C]ourts considering ADA discrimination claims must distinguish between an employer's knowledge of an employee's disability and an employer's knowledge of any limitations experienced by the employee.") (citing *Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 164 (5th Cir.1996)).
[36] Pl. Opp., p. 3., emphasis added.
[37] R. Doc. 33-3, Pl. Opp. Ex. C, Miller Depo., at 219:24.
[38] R. Doc. 33-3, Pl. Opp. Ex. C., Miller Depo., at 219:24-220:18; 270:17-24.

### 5. Plaintiff's "breaks" argument is a "red herring"

Plaintiff's claim that there is no evidence of the breaks taken by him is irrelevant. Plaintiff admitted that there are no break time limits and that Pharmacists are on the "honor system" to notify their co-workers when they take breaks.[39] Because Plaintiff worked at night, there was only one other Pharmacist on duty, so that other Pharmacist had to know when Plaintiff was on break (because Plaintiff had to so inform him/her).[40] The sworn statements of Mai and Nguyen categorically attest that they each on separate occasions observed Plaintiff sleeping when he was not on a break. These attestations are not disputed and prove a legitimate, nondiscriminatory reason for Plaintiff's termination.

### 6. There is no *prima facie* case of disability discrimination or evidence of pretext.

Plaintiff has failed to present competent summary judgment evidence that he continued to suffer from limitations caused by PTSD in September and December 2017 when he was observed by two Pharmacists sleeping on the job (the sole cause for his termination in January 2018). This is not a *pro forma* component of Plaintiff's case-in-chief that can be merely alleged without supporting proof; it requires evidence raising a genuine issue of material fact to survive summary judgment.[41] Plaintiff must establish not only that he suffered PTSD in 2013 and 2015 when he took FMLA and that he informed someone at Touro other than Hughes, but also that he continued to have such condition through September/December 2017 and that it impacted his job by causing him to sleep on the job, or alternatively, that Touro regarded him as being disabled. Plaintiff has failed to make such showing.

---

[39] R. Doc. 33-3, Pl. Opp. Ex. C, Miller Depo., at 115:15–16. ("You still got to notify them that I'm on break.")
[40] R. Doc. 33-3, Pl. Opp. Ex. C, Miller Depo., at 100:8–12(only 2 Pharms on duty, "one in front and one in back".)
[41] Contrary to Plaintiff's argument, the *Johnson* case does not provide that PTSD is *per se* a disability under the ADA; there, the court held that the plaintiff sufficiently alleged that his termination was based on his PTSD where he specifically reported his PTSD to management in a harassment complaint against his supervisor, and thus denied an employer's motion to dismiss. See *Johnson v. JPMorgan Chase & Co.*, No. 16-1632, 2017 WL 1237979 (W.D. La. Feb. 16, 2017). *Johnson* did not involve a motion for summary judgment and did not address the sufficiency of evidence showing that the plaintiff actually had limitations caused by PTSD at the time of his termination.

*Watkins*, a Fifth Circuit case cited by Plaintiff, is inapposite because the decision-maker in that case testified that (1) he caught, but did not terminate, another employee for sleeping on the job, and (2) he did not recall ever terminating another employee for sleeping on the job. [42] In contrast, the decision-makers here—Montgomery and Mousa—did not catch any other Pharmacist sleeping; nor did they receive any complaint that any other Pharmacist slept on the job. Additionally, Mousa testified that she terminated other employees for appearing to sleep on the job[43]. And Montgomery confirmed that she terminated a female Pharmacy Technician (Coleman) for sleeping on the job and issued a warning to a male Pharmacist (Smith) who appeared to be "nodding off" during shift, but the video evidence she reviewed was inconclusive.[44]

Plaintiff fails to demonstrate pretext by any *post hoc* justification. *Heinsohn* is distinguishable based on the lack of evidence prior to the termination decision of the employer's proffered justification;[45] whereas, in this case, the record contains ample evidence that two Pharmacists complained in December 2017 that Plaintiff slept on the job, a full investigation was conducted, and he was terminated in January 2018 as a result.

Plaintiff has failed to raise a genuine issue of material fact. The Motion for Summary Judgment should be granted and Plaintiff's claims dismissed with prejudice.

---

[42] *Watkins v. Tregre*, No. 20-30176, 2021 WL 1826269, at *6 (5th Cir. May 7, 2021).
[43] R. Doc. 33-5, Pl. Opp. Ex. E., Mousa Depo., at 34:9-22.
[44] R. Doc. 33-15, Pl. Opp. Ex. O, Touro Depo., at 30:12, 31:24.
[45] *Heinsohn v. Carabin & Shaw, P.C.*, 932 F.3d 224 (5th Cir. 2016)

Respectfully submitted:

*/s/ Matthew M. McCluer*
**BREAZEALE, SACHSE & WILSON, L.L.P.**
Peter J. Butler, Jr., La. Bar Roll No. 18522
Matthew M. McCluer, La. Bar Roll No. 33970
LL&E Tower, Suite 1500
909 Poydras Street
New Orleans, LA 70112-4004
Telephone: (504) 619-1800
Fax: (504) 584-5452

Melissa M. Shirley, La. Bar Roll No. 25248
301 Main Street, 23rd Floor
Baton Rouge, Louisiana 70821-3197
Telephone: 225-387-4000
Fax: 225-381-8029

***Attorneys for Defendant, Touro Infirmary***